# In the United States Court of Federal Claims

No. 16-531C
Filed: April 26, 2017
NOT FOR PUBLICATION

|  |  |  |
|---|---|---|
| SWAIN COUNTY, NORTH CAROLINA, | ) ) ) | |
| Plaintiff, | ) ) | Breach of Contract; Rule 12(b)(1); Subject-Matter Jurisdiction; Rule 12(b)(6); Failure to State a Claim. |
| v. | ) ) | |
| THE UNITED STATES, | ) ) | |
| Defendant. | ) ) | |

*C. Peter Dungan*, Counsel of Record, *Nicole D. Picard*, Of Counsel, *Katherine L. Morga*, Of Counsel, *Thomas L. McGovern*, Of Counsel, *Douglas P. Wheeler*, Of Counsel, Hogan Lovells US LLP, Washington, DC, for plaintiff.

*Tara K. Hogan*, Senior Trial Counsel, *Claudia Burke*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, *Chad A. Readler*, Acting Assistant Attorney General, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for defendant.

**MEMORANDUM OPINION AND ORDER**

GRIGGSBY, Judge

## I.   INTRODUCTION

In this breach of contract action, plaintiff, Swain County, North Carolina ("Swain County"), alleges that the United States has breached a settlement agreement by and between the Tennessee Valley Authority (the "TVA"), the United States Department of the Interior (the "DOI") and Swain County, by failing to make certain payments required under that agreement. Compl. ¶¶ 1, 18-22. As a result of the alleged breach, Swain County seeks to recover $39,200,000.00 in monetary damages and certain declaratory relief. *See generally id.* The government has moved to dismiss this action for lack of subject-matter jurisdiction and for

failure to state a claim upon which relief can be granted, pursuant to Rules 12(b)(1) and (6) of the Rules of the United States Court of Federal Claims ("RCFC").  For the reasons discussed below, the Court **GRANTS** the government's motion to dismiss.

## II.     FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.  Factual Background

This contract dispute arises out of the ill-fated construction of the North Shore Road in Swain County, North Carolina.  Plaintiff, Swain County, is an administrative division of the State of North Carolina.  *Id*. ¶ 1.

Swain County alleges in this action that the United States has breached a settlement agreement that it entered into with the TVA and the DOI in 2010 (the "2010 Agreement"), by failing to make certain payments required under that agreement.  *Id*. ¶¶ 1, 18-22.  Specifically, Swain County asserts breach of contract, failure to cooperate and breach of implied duty of good faith and fair dealing, and anticipatory repudiation claims against the government.  *Id*. ¶¶ 60-79.  In addition, Swain County asserts a claim for declaratory relief regarding the availability of certain National Park Service (the "NPS") appropriations to satisfy the government's payment obligations under the 2010 Agreement.  As relief, Swain County seeks to recover $39,200,000.00 in monetary damages and this declaratory relief.  *See generally id*.

### 1.  The Construction Of The North Shore Road

In 1929, the local government in the area now known as Swain County, NC constructed North Carolina Highway 288 ("NC 288")—a state highway to run alongside the Little Tennessee River.  *Id*. ¶¶ 7-8.  During World War II, the TVA constructed the Fontana Dam on the Little Tennessee River.  *Id*. ¶ 9.  The Fontana Dam created Lake Fontana, which flooded NC 288 and isolated the areas located to the north of the reservoir created by the dam.  *Id*. ¶¶ 9-10.

As a result of the flooding caused by the construction of the Fontana Dam, the State of North Carolina, Swain County, the NPS and the TVA entered into an agreement in 1943, that

---

[1] The facts recited in this Memorandum Opinion and Order are taken from the complaint ("Compl."), the exhibits to the complaint ("Ex.") and the government's motion to dismiss ("Def. Mot.").  Unless otherwise noted, the facts recited herein are undisputed.

required, among other things, that the DOI construct the North Shore Road, which would run through the Great Smokey Mountains National Park and provide better access to areas isolated by Lake Fontana (the "1943 Agreement"). *Id.* ¶ 19. The construction of the North Shore Road began in 1947 and continued through the mid-1960s. *Id.* ¶ 21. But, construction was hampered by piecemeal funding and challenging terrain. *Id.*

In 1976, the NPS suspended construction of the North Shore Road. *Id.* ¶ 23. Thereafter, in 1980, then-Secretary of the Interior, Cecil Andrus, agreed to support legislative efforts to require the federal government to provide a cash settlement to Swain County in exchange for retiring the 1943 Agreement and the government's obligation to construct the North Shore Road. *Id.* ¶¶ 25-26. During the 1980s and 1990s, there were several unsuccessful efforts to secure the funds for this settlement. *Id.* ¶¶ 26-30.

In 2007, the NPS issued a Final Environmental Impact Statement Record of Decision ("ROD") regarding the delayed construction of the North Shore Road, which determined that a monetary settlement was the preferred way to settle the federal government's obligations to Swain County. *Id.* ¶ 36. The NPS did not commit to a particular settlement amount in the ROD. *Id.* ¶ 42; Compl. Ex. 1, at 9.

### 2. The 2010 Settlement Agreement

In 2010, the State of North Carolina, Swain County, the TVA, and the DOI entered into the 2010 Agreement to "settle any and all claims under the 1943 Agreement, and to extinguish and supersede the 1943 Agreement in its entirety." Compl. Ex. 2, at 3. The 2010 Agreement provides, among other things, that Swain County would receive $4,000,000.00 from the federal government upon the enactment of the Department of Defense Appropriations Act of 2010, in lieu of the completion of the construction of the North Shore Road. *Id.* The 2010 Agreement further provides that an additional payment of $8,800,000.00 would be made to Swain County at a future date. *Id.*; Compl. ¶ 47. And so, in 2010, the DOI paid $12,800,000.00 to Swain County, pursuant to the terms of the 2010 Agreement. Compl. ¶ 50.

Specifically relevant to this dispute, the 2010 Agreement contains a provision that calls for the government to make future payments to Swain County as compensation for the

government's failure to construct the North Shore Road. Specifically, Section III (2)(b) of the 2010 Agreement provides, in relevant part, that:

> The United States Department of the Interior shall pay or cause to be paid to or on behalf of Swain County (as hereinafter provided) as follows: . . . Such additional sums, not to exceed thirty-nine million, two hundred thousand dollars ($39,200,000.00), as are hereafter appropriated by Act of Congress for the express purpose of effectuating the 2010 Agreement relating to the non-construction of the North Shore Road on or before December 31, 2020.

Compl. Ex. 2, at 3.

In 2010 and 2011, the DOI requested that Congress appropriate funds to make the future payments to Swain County contemplated by Section III (2)(b). Compl. ¶¶ 47, 52. But, Congress did not authorize appropriations for these future payments. Def. Mot. at 6 (citing Compl. ¶ 52).[2] Since 2012, the DOI has not requested appropriations for the future payments to Swain County. Compl. ¶ 57.

### 3.  The GAO Opinion

On December 5, 2012, former United States Representative Heath Shuler requested that the United States Government Accountability Office (the "GAO") issue an opinion regarding whether the NPS could use certain funds appropriated in the 2012 Appropriations Act to make the payments required under the 2010 Agreement. Compl. Ex. 3, at 1. The GAO concluded in an opinion dated December 5, 2012, that the "DOI has no obligation to use fiscal year 2012 appropriated funds to make a payment to Swain County". *Id*. at 1, 4. But, the GAO also concluded that the DOI had discretion to use the appropriated funds for this purpose. *Id*. at 6. And so, the DOI ultimately decided not to use the appropriated funds for this purpose. Def. Mot. at 8.

---

[2] In 2012, Congress passed the 2012 Consolidated Appropriations Act, which included a lump sum appropriation to the NPS for the "construction, improvements, repair, or replacement of physical facilities." Compl. Ex. 3, at 3 (quoting Pub. L. No. 112-74, div. E, title 1, 125 Stat. 786, 991 (Dec. 23, 2011)). The conference report that accompanied the legislation made reference to a prioritized list of the NPS projects, but the conference report did not specifically identify the construction of the North Shore Road as an itemized project. Compl. Ex. 3, at 3 (citing H.R. Conf. Rep. No. 112-331, at 1057 (2011); H.R. 2055, 112th Cong., 1st sess.).

Despite the many setbacks in receiving the payments contemplated by the 2010 Agreement, Swain County has continued to pursue these future payments. But, to date Swain County has not received any additional payments under the 2010 Agreement. Compl. ¶¶ 49-51.

### B.  Procedural History

Swain County filed the complaint in this matter on April 29, 2016. *See generally id*. On September 28, 2016, the government filed a motion to dismiss this matter for lack of subject-matter jurisdiction and for failure to state a claim upon which relief can be granted, pursuant to RCFC 12(b)(1) and 12(b)(6). *See generally* Def. Mot. Plaintiff filed a response to the government's motion to dismiss on November 30, 2016. *See generally* Pl. Resp. The government filed its reply brief on February 1, 2017. *See generally* Def. Reply.

These matters having been fully briefed, the Court addresses the pending motion to dismiss.

### III.   LEGAL STANDARDS

### A.  Jurisdiction and RCFC 12(b)(1)

When deciding a motion to dismiss for lack of subject-matter jurisdiction, pursuant to RCFC 12(b)(1), this Court "must assume all factual allegations to be true and draw all reasonable inferences in the plaintiff's favor." *See Redondo v. United States*, 542 F. App'x 908, 910 (Fed. Cir. 2013). Plaintiff, nonetheless, bears the burden of establishing subject-matter jurisdiction and must do so by a preponderance of the evidence. *Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed. Cir. 1998); *Reynolds v. Army and Air Force Exchange Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988) (citations omitted). And so, should the Court determine that "it lacks jurisdiction over the subject matter, it must dismiss the claim." *Matthews v. United States*, 72 Fed. Cl. 274, 278 (Fed. Cl. 2006) (citations omitted).

In this regard, the United States Court of Federal Claims is a court of limited jurisdiction and "possess[es] only that power authorized by Constitution and statute. . . ." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The Tucker Act grants the Court jurisdiction over:

> [A]ny claim against the United States founded either upon the
> Constitution, or any Act of Congress or any regulation of an

executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1).

The Tucker Act, however, is a "jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages . . . . [T]he Act merely confers jurisdiction upon [the United States Court of Federal Claims] whenever the substantive right exists." *United States v. Testan*, 424 U.S. 392, 398 (1976).  And so, to pursue a substantive right against the United States under the Tucker Act, a plaintiff must identify and plead a money-mandating constitutional provision, statute, or regulation; an express or implied contract with the United States; or an illegal exaction of money by the United States.  *Cabral v. United States*, 317 F. App'x 979, 981 (Fed. Cir. 2008) (citing 28 U.S.C. § 1491(a)(1); *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005)).

The Tucker Act grants this Court jurisdiction to consider claims based "upon any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1).  The Court does not, however, possess jurisdiction to consider claims against the United States "based on contracts implied in law." *United States v. Mitchell*, 463 U.S. 206, 218 (1983) (citing *Merritt v. United States*, 267 U.S. 338, 341 (1925)); *Aboo v. United States*, 86 Fed. Cl. 618, 626 (2009), *aff'd*, 347 Fed. Appx. 581 (Fed. Cir. 2009).  And so, to bring a valid contract claim against the United States in this Court, the underlying contract must be either express or implied-in-fact.  *Aboo*, 86 Fed. Cl. at 626.

Plaintiff also bears the burden of proving the existence of a contract with the United States, and plaintiff must show that there is "something more than a cloud of evidence that could be consistent with a contract to prove a contract and enforceable contract rights." *D & N Bank v. United States*, 331 F.3d 1374, 1377 (Fed. Cir. 2003).  To establish the existence of either an express or implied-in-fact contract with the United States, a plaintiff must show: (1) mutuality of intent; (2) consideration; (3) lack of ambiguity in the offer and acceptance; and (4) actual authority to bind the government in contract on the part of the government official whose conduct is relied upon.  *Kam-Almaz v. United States*, 682 F.3d 1364, 1368 (Fed. Cir. 2012).  A government official's actual authority to bind the United States may be express or implied.  *Roy*

*v. United States*, 38 Fed. Cl. 184, 188-89 (1997), *dismissed*, 124 F.3d 224 (Fed. Cir. 1997).  And so, "the [g]overnment, unlike private parties, cannot be bound by the apparent authority of its agents."[3] *Id.* at 187.

In addition, to assert a valid contract claim under the Tucker Act, the claim must be "limited to actual, presently due money damages from the United States."  *United States v. King*, 395 U.S. 1, 3 (1969); *see also Testan*, 424 U.S. at 398.  It is not enough that the transaction sued upon implicate a right to money or be money-related.  *Sharman Co., Inc. v. United States*, 24 Cl. Ct. 763, 766 (1991).  In addition, the Court may not consider a claim for money damages that is anticipatory, rather than for presently due money damages.  *See Logan Canyon Cattle Assoc. v. United States*, 34 Fed. Cl. 165, 168 (1995); *Gentry v. United States*, 212 Ct. Cl. 1, 6 n.1 (1976).  And so, "[t]o maintain a cause of action pursuant to the Tucker Act that is based on a contract, the contract must be between the plaintiff and the government and entitle the plaintiff to money damages in the event of the government's breach of that contract."  *See Ransom v. United States,* 900 F.2d 242, 244 (Fed. Cir. 1990).

### B.  RCFC 12(b)(6)

When deciding a motion to dismiss based upon failure to state a claim upon which relief can be granted, pursuant to RCFC 12(b)(6), this Court must also assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor.  *See Redondo*, 542 F. App'x at 910.  And so, to survive a motion to dismiss under RCFC 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on

---

[3] A government official possesses express actual authority to bind the United States in contract "only when the Constitution, a statute, or a regulation grants it to that agent in unambiguous terms."  *Jumah v. United States*, 90 Fed. Cl. 603, 612 (2009) *aff'd*, 385 F. App'x 987 (Fed. Cir. 2010) (internal citations omitted); *see also City of El Centro v. United States*, 922 F.2d 816, 820 (Fed. Cir. 1990).  On the other hand, a government official possesses implied actual authority to bind the United States in contract "when the employee cannot perform his assigned tasks without such authority and when the relevant agency's regulations do not grant the authority to other agency employees."  *SGS-92-X003 v. United States*, 74 Fed. Cl. 637, 652 (2006) (citations omitted).  In addition, when a government agent does not possess express or implied actual authority to bind the United States in contract, the government can still be bound by contract if the contract was ratified by an official with the necessary authority. *Janowsky v. United States*, 133 F.3d 888, 891–92 (Fed. Cir. 1998).

its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When the complaint fails to "state a claim to relief that is plausible on its face," the Court must dismiss the complaint. *Iqbal*, 556 U.S. at 678 (citation omitted). On the other hand, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity," and determine whether it is plausible, based upon these facts, to find against the defendant. *Iqbal*, 556 U.S. at 663-64, 679 ("A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

### C. Contract Interpretation

Lastly, the United States Court of Appeals for the Federal Circuit has held that "[c]ontract interpretation is a question of law." *Barron Bancshares, Inc., v. United States*, 366 F.3d 1360, 1368 (Fed. Cir. 2004); *Fortec Constructors v. United States*, 760 F.2d 1288, 1291 (Fed. Cir. 1985); *Greenhill v. United States*, 92 Fed. Cl. 385, 393 (2010) ("The interpretation of a settlement agreement is a question of law."); *see also Harris v. Dep't of Veterans Affairs*, 142 F.3d 1463, 1467 (Fed. Cir. 1998) ("A settlement agreement is a contract, and we apply basic contract principles unless precluded by law."). It is also well-established that the Court's interpretation of a contract begins with its "plain language." *McAbee Constr., Inc. v. United States*, 97 F.3d 1431, 1435 (Fed. Cir. 1996). And so, the plain and unambiguous provisions of a contract "must be given their plain and ordinary meaning and the court may not resort to extrinsic evidence to interpret them.'" *Id.* (citations omitted); *see also Jowett, Inc. v. United States*, 234 F.3d 1365, 1368 (Fed. Cir. 2000) (holding that the Court gives "the words of the agreement their ordinary meaning unless the parties mutually intended and agreed to an alternative meaning."); *Hills Materials Co. v. Rice*, 982 F.2d 514, 516 (Fed. Cir. 1992) ("Wherever possible, words of a contract should be given their ordinary and common meaning.") (citations omitted).

The Court also interprets the "provisions of a contract so as to make them consistent" and so as not "to render them ineffective or superfluous.'" *Abraham v. Rockwell Int'l. Corp.*, 326 F.3d 1242, 1251, 1254 (Fed. Cir. 2003) (citations omitted); *Fortec Constructors*, 760 F.2d at 1292 ("This court must be guided by the well accepted and basic principle that an interpretation

that gives a reasonable meaning to all parts of the contract will be preferred to one that leaves portions of the contract meaningless."). But, in instances in which "there is a clear conflict between" contract clauses, the Court must "determine which of the conflicting terms controls." *Abraham*, 326 F.3d at 1253-54 (citations omitted). To do so, the Court must apply the "general rules of interpretation," which require that, "'[w]here specific and general terms in a contract are in conflict, *those which relate to a particular matter control over the more general language.*'" *Id.* at 1254 (citations omitted) (emphasis existing).

The Federal Circuit has also recognized that a contract that is reasonably susceptible to more than one interpretation is ambiguous. *Hills Materials Co.*, 982 F.2d at 516 (citations omitted). Where a latent ambiguity exists in a contract, "the court will construe the ambiguous term against the drafter of the contract when the nondrafter's interpretation is reasonable," under the general rule of *contra proferentem. Id.* (citations omitted); *see also NVT Technologies, Inc. v. United States*, 370 F.3d 1153, 1159 (Fed. Cir. 2004) ("To show an ambiguity it is not enough that the parties differ in their respective interpretations . . . both interpretations must fall within the zone of reasonableness."); *HPI/GSA-3C, LLC v. Perry*, 364 F.3d 1327, 1334 (Fed. Cir. 2004) ("Before a court may enforce the general rule of *contra proferentem* against the drafter of an ambiguity, the contractor's interpretation of that ambiguity must be reasonable."). But, "an exception to the general rule that requires construing ambiguities against" the drafter exists where "the ambiguities are 'so "patent and glaring" that it is unreasonable for a [party] not to discover and inquire about them.'" *HPI/GSA-3C, LLC*, 364 F.3d at 1334 (citations omitted). "Where an ambiguity is not sufficiently glaring to trigger the patent ambiguity exception, it is deemed latent and the general rule of *contra proferentem* applies." *Id.* (citations omitted).

## IV.   LEGAL ANALYSIS

The government has moved to dismiss this matter for lack of subject-matter jurisdiction and for failure to state a claim upon which relief may be granted for several reasons. S*ee generally* Def. Mot. First, the government argues that this Court does not possess jurisdiction to consider plaintiff's breach of contract claims in Counts I, II, and III of the complaint, because the government has until 2020 to make any required payments to Swain County and, as a result, these claims are not for "presently due" money damages. *Id.* at 10. Second, the government argues that the Court does not possess jurisdiction to consider Swain County's claim for

declaratory judgment in Count IV of the complaint, because this claim does not meet any of the exceptions to the general rule that the Court may not consider claims for equitable relief under the Tucker Act. *Id*. at 17, 19-20.

Alternatively, the government seeks dismissal of this action pursuant to RCFC 12(b)(6) upon six grounds: Namely, that (1) the government did not breach the 2010 Agreement, because Congress has made no express appropriations for the payments required under that agreement; (2) the government did not breach an implied duty of cooperation under the 2010 Agreement, because this implied duty has no applicability to this case; (3) the government did not breach its implied covenant of good faith and fair dealing, because it has no contractual obligation to seek Congressional appropriations for the future payments required under the 2010 Agreement; (4) Swain County's anticipatory repudiation claim fails because, the government has no contractual obligation to seek Congressional appropriations and, thus, the government did not repudiate any such duty under the 2010 Agreement; (5) Swain County is not entitled to declaratory relief regarding the availability of NPS appropriations under the Tucker Act; and (6) Swain County is not entitled to consequential damages, because plaintiff could not have had a firm expectation in receiving any payments under 2010 Agreement prior to December 31, 2020. *Id*. at 20-40.

For the reasons discussed below, the Court does not possess subject-matter jurisdiction to entertain Swain County's breach of contract claims because plaintiff has no right to presently due money damages under the 2010 Agreement. The Court is also without jurisdiction to consider plaintiff's claim for declaratory relief, because such relief is not appropriate under the Tucker Act nor necessary to the resolution of this litigation. And so, the Court **GRANTS** the government's motion to dismiss.

**A. The Court Does Not Possess Jurisdiction To Consider Plaintiff's Claims**

**1.     Plaintiff's Contract Claims Are Not For "Presently Due" Money Damages**

As an initial matter, the Court does not possess jurisdiction to consider plaintiff's breach of contract claims, because Swain County has no right to "presently due" money damages under the 2010 Agreement. It is well-established that to assert a valid contract claim under the Tucker Act, plaintiff's claim must be "limited to actual, presently due money damages from the United States." *King*, 395 U.S. at 3; *see also Testan*, 424 U.S. at 398. And so, to maintain a cause of

action here, Swain County must show that it is entitled to recover money damages if the government breached the 2010 Agreement. *See Ransom*, 900 F.2d at 244.

A plain reading of the 2010 Agreement shows that Swain County is not entitled to presently due money damages. Specifically, with regards to the future payments to be made to Swain County, the agreement is unambiguous and provides, in relevant part, that:

> The United States Department of the Interior shall pay or cause to be paid to or on behalf of Swain County (as hereinafter provided) as follows: . . .
>
> > (b) Such additional sums, not to exceed thirty-nine million, two hundred thousand dollars ($39,200,000.00), as are hereafter appropriated by Act of Congress for the express purpose of effectuating the 2010 Agreement relating to the non-construction of the North Shore Road *on or before December 31, 2020*.

Compl. Ex. 2, at 3-4 (emphasis supplied). The 2010 Agreement clearly provides that the government "shall pay or cause to be paid" any additional payments to Swain County "on or before December 31, 2020". *Id.* And so, the plain text of the 2010 Agreement makes clear that the government has until December 31, 2020 to make any additional payments to plaintiff—a deadline that will occur more than three years after Swain County commenced this litigation.

Because the government has until December 31, 2020 to make any additional payments to Swain County under the plain terms of the 2010 Agreement, plaintiff is not entitled to "presently due" money damages in connection with the alleged breach of that agreement regarding such future payments.

The complaint also makes clear that Swain County's breach of contract claims are anticipatory, rather than for presently due money damages. In this regard, Swain County alleges in the complaint, that "[a]lthough NPS requested installment payment funds from [C]ongress in 2010, 2011 and 2012, [the NPS] has failed to do so for every year since that time, sending a clear message that NPS has no intention to request, much less disburse, the amounts owed to [Swain County]." Compl. at 3-4. Given this, the complaint makes clear that Swain County anticipates that the government will not honor its obligation to make the future payments called for under the 2010 Agreement.

This Court may not consider such a claim for money damages under the Tucker Act, because the claim is anticipatory, rather than for presently due money damages under the Tucker Act. *See Logan Canyon Cattle Assoc.*, 34 Fed. Cl. at 168.  And so, the Court does not possess jurisdiction to consider Swain County's breach of contract claims here.  RCFC 12(b)(1).

The Court is also unpersuaded by Swain County's arguments that it has alleged claims for presently due money damages.  Swain County argues in its opposition to the government's motion to dismiss that it has alleged claims for presently due money damages in this litigation because the government waived the requirement in the 2010 Agreement that Congress appropriate funds expressly for the purpose of making the future payments required under that agreement.  Pl. Resp. at 5.  But, even if true, Swain County does not explain how such a waiver overcomes the fact that the government has no obligation to make any payments to Swain County before the December 31, 2020 deadline in that agreement.

Swain County's arguments that it may pursue this litigation because the government is currently in breach of the 2010 Agreement—by breaching a duty of cooperation and by an anticipatory repudiation—are equally unavailing.  Pl. Resp. at 5-7.  Even if the Court were to accept plaintiff's argument that the government has a duty to cooperate in seeking Congressional appropriations to fund the future payments required under the 2010 Agreement, the government still has more than three years left to pursue such appropriations.

Plaintiff's anticipatory repudiation claim is also belied by the plain language of the 2010 Agreement.  Swain County alleges in the complaint that the "NPS's repeated failure to request appropriates from Congress," "failure to pay Swain County appropriated funds," and "failure to provide assurances" that the government would fulfill its obligations under the 2010 Agreement, constitute an anticipatory repudiation of the government's contractual obligation to request appropriations from Congress.[4]  Compl. ¶¶ 74-79.  But, Swain County does not point to—and

---

[4] "Anticipatory breach, also known as repudiation, occurs when a contractually obligated party communicates that it will commit a breach that would constitute a total breach." *Westlands Water District v. United States*, 109 Fed. Cl. 177, 207 (2013) (citations omitted).  "[T]he promisor's renunciation of a 'contractual duty before the time fixed in the contract for . . . performance' is a repudiation." *Franconia Assocs. v. United Sates*, 536 U.S. 129, 143 (2002) (quoting 4 A. Corbin, Contracts § 959, p. 855 (1951)).

the Court does not find—any language in the 2010 Agreement which *requires* the government to seek Congressional appropriations to satisfy the future payments under that agreement.  Pl. Resp. at 21-30; *see generally* Compl. Ex. 2.

Indeed, at bottom, Swain County simply has not established that it has a right to presently due money damages under the 2010 Agreement.  In fact, that agreement does not require the government to make any future payments to Swain County before December 31, 2020.  While the government may make installment payments beforehand, there can be no breach of the government's obligation to make the future payments until after the performance deadline set forth in the agreement has passed.  And so, the Court must dismiss plaintiff's breach of contract claims for lack of subject-matter jurisdiction.  RCFC 12(b)(1).

**2.  The Court May Not Consider Plaintiff's Request For A Declaratory Judgment**

The Court must also dismiss Swain County's claim for declaratory relief.  In the complaint, Swain County requests that the Court:

> Issue a declaratory judgment, pursuant to 28 U.S.C. § 1491(a)(1), that
>
> > a. The federal government, through NPS and DOI, breached its contractual duties under the 2010 Agreement; AND
> > b. The NPS Fiscal Year 2010 and later construction lump sum appropriations are available to pay Swain County all additional amounts owed under the 2010 Agreement.

Compl. at Prayer for Relief.  The Tucker Act affords the Court with jurisdiction to grant declaratory relief in limited circumstances.  28 U.S.C. § 1491(b)(2).  Specifically relevant here, the Court may grant equitable relief pursuant to 28 U.S.C. § 1491(a)(2), which provides, in relevant part, that:

> To provide an entire remedy and to complete the relief afforded by the judgment, the court may, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records, and such orders may be issued to any appropriate official of the United States. In any case within its jurisdiction, the court shall have the power to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just.

13

28 U.S.C. § 1491(a)(2).

The Court may not entertain Swain County's request for declaratory relief here, because the requested relief does not fall within any of the categories of relief described in Section 1491(a)(2).  In fact, the declaratory relief that plaintiff seeks regarding the availability of NPS appropriations involves neither the restoration to office or position, placement in duty or retirement status, nor the correction of records.  Nor does the requested declaratory relief seek a remand to an administrative or executive body.

The declaratory relief that Swain County seeks is also not "necessary to the resolution of a claim for money presently due and owing."  *Hydrothermal Energy Corp. v. United States*, 26 Cl. Ct. 7, 16 (1992) (holding that although the Court has "authority to issue rulings of law declaring the rights of parties under a contract where such rulings are necessary to the resolution of a claim for money presently due and owing . . . [it] cannot issue a declaration of rights under a contract unless such a declaration is a part of the determination of a monetary claim.").  As discussed above, Swain County has not asserted a claim for presently due money damages in this action.  In addition, a declaration by the Court regarding whether certain NPS appropriations may be used to satisfy the government's future payment obligations under the 2010 Agreement would not be necessary to resolve the legal issue presented in this action—whether the government breached the 2010 Agreement by failing to use funds expressly appropriated for that purpose.  *See id*. ("But . . . this court cannot issue a declaration of rights under a contract unless . . . [it] is a part of the determination of a monetary claim").  Given this, the Court must also dismiss Count IV of the complaint for lack of subject-matter jurisdiction.  RCFC 12(b)(1).[5]

## V.   CONCLUSION

In sum, a plain reading of the complaint and the 2010 Agreement makes clear that the Court does not possess jurisdiction to consider Swain County's breach of contract and declaratory relief claims.  When read in the light most favorable to plaintiff, the complaint also

---

[5] Because the Court concludes that it does not possess subject-matter jurisdiction to consider plaintiff's breach of contract and declaratory relief claims, the Court does not reach the remaining issues raised in the government's motion to dismiss.

makes clear that Swain County's breach of contract claims are anticipatory rather than for presently due money damages.

In addition, plaintiff's declaratory relief claim is also jurisdictionally precluded, because the relief that plaintiff seeks does not fall within the limited equitable relief that the Court may grant under the Tucker Act.  Such declaratory relief is also not necessary to the resolution of this contract dispute.

And so, for the foregoing reasons, the Court:

1.  **GRANTS** the government's motion to dismiss; and

2.  **DISMISSES** the complaint.

The Clerk shall enter judgment accordingly.

The parties shall bear their own costs.

**IT IS SO ORDERED**

s/ Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
Judge